**CV 12 - 04325 ORIGINAL**

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

    NATASHA SLATER

                Plaintiff,

    -against-

P.O. Karen Mackey, Shield # 2267, Tax ID 4000

63rd Precint, NYPD, AND

P.O. Young, , Tax ID 4000

63rd Precint, NYPD,

The City of New York; New York City Police

Department; 63rd Precint;

        AND

CHILD PROTECTIVE SPECIALIST:

Charmaine McDonald, ACS # 6666517, Unit #:181-3,

New York City Administration for Child Services

DCP/ Brooklyn Field Office

                Defendants

-------------------------------------------------------------------X

GARAUFIS, J.

LEVY, M.J.

**COMPLAINT**

RECEIVED AUG 28 2012 PRO SE OFFICE

2012 AUG 28 PM 3:37 U.S. DISTRICT COURT EASTERN DISTRICT OF NEW YORK FILED CLERK

**Sir(s):** **PLEASE TAKE NOTICE** the claimant herein hereby makes complaint and demand against: **P.O. Karen Mackey, Shield #2267, Tax ID 4000,63rd Precinct, NYPD; P.O. Young, 4000,63rd Precinct, NYPD; the City of New York; New York City Police Department; 63RD PCT . AND Child Protective Specialist Charmaine McDonald, ACS #6666517, Unit # 181-3, New York City Administration Services, DCP/ Brooklyn Field Office**

1. Name and post-offices address of each plaintiff and of her attorney is:

   NATASHA SLATER

   1633 NOSTRAND AVENUE

   APT # 2B

   BROOKLYN, NEW YORK 11226

   Name and post-offices of each defendant and of his/her attorney is:

   **NEW YORK POLICE DEPARTMENT**

   **63ᴿᴰ PRECINT**

   P.O. Karen Mackey Shield #2267

   P.O. Young

   1844 BROOKLYN AVENUE

   BROOKLYN, NEW YORK 11210

   **NEW YORK CITY ADMINISTRATION FOR CHILDREN'S SERVICES**

   CHARMAINE MCDONALD #6666517 Unit #181-3

   CHILD PROTECTIVE SPECIALIST

   DCP/BROOKLYN FIELD OFFICE

   2554 LINDEN BLVD

   BROOKLYN, NEW YORK 11208

2. Nature of the claim:

   Claimant seeks to recover damages for false imprisonment, false arrest, malicious prosecution, federal and state civil rights violations and deprivations, federal and state constitutional rights violations and deprivations, federal and state statutory rights violations and

deprivations, including but not limited to 42 USC §1983, illegal stop, illegal search, illegal seizure, assault, excessive force, intimidation, pain and suffering, negligent and intentional infliction of emotional distress.

Claimant seeks to recover damages for False Accusations of Robbery in the 2nd Degree/Aided by another, False Accusations of Neglect, False Accusations of Having Mental Illness, False Accusations of Drug Abuse, Children Removed by ACS Without Just Cause, Child Neglect and or Abuse by ACS, Malicious Prosecution with Sins of Commission and Omission.

3. Time when, the place where and the manner in which the claim arose:

On June 1, 2012 at or about 5:35 p.m, City of New York County of the Kings, Brooklyn and State of New York, the Defendants, did jointly and severally violate the Claimant's constitutional and statutory rights under the laws of the United States and the State of New York, and otherwise by stopping her, without a credible reason or reasonable suspicion and thereafter arresting her without probable cause and thereafter falsely charged her with a crime, strip searched her and thereafter maliciously prosecuted her and removed her children from her home without just cause.

ACS Child Protective Specialist Charmaine McDonald, Detective Karen Mackey and Detective Young went to Plaintiffs address to conduct an investigation of a report made about one of Plaintiffs three children. Alleged date of incident is May 24th, 2012.
ACS Child Protective Specialist Charmaine McDonald, Detective Karen Mackey and Detective Young requested to speak with Plaintiffs child

whom the complaint was made about.
After ACS Child Protective Specialist Charmaine McDonald, Detective Karen Mackey and Detective Young spoke with Plaintiffs child whom the complaint was made about, Detective Karen Mackey and Detective Young demanded that Plaintiff go with them to the 63rd Precint along with Plaintiffs children and ACS Child Protective Specialist Charmaine McDonald.

After ACS Child Protective Specialist Charmaine McDonald, Detective Karen Mackey and Detective Young spoke with Plaintiffs child whom the complaint was made about, Detective Karen Mackey and Detective Young demanded that Plaintiff go with them to the 63rd Precint along with Plaintiffs children and ACS Child Protective Specialist Charmaine McDonald.
Plaintiffs children were escorted to the 63rd Precint by ACS Child Protective Specialist Charmaine McDonald.

Plaintiff was escorted to the 63rd Precint by Detective Karen Mackey and Detective Young.

All three of Plaintiffs children were interviewed on June 1st, 2012.

Plaintiff was also interviewed on June 1st, 2012.

Upon Conclusion of investigation, Plaintiff was arrested by Detective Karen Mackey and placed in a holding cell.

Thereafter ACS Child Protective Specialist Charmaine McDonald stated to Plaintiff that ACS Child Protective Specialist Charmaine McDonald spoke with her supervisor.

ACS Child Protective Specialist Charmaine McDonald then stated to Plaintiff that ACS Child Protective Specialist's Charmaine McDonald's Supervisor did not feel the children were being neglected or in imminent danger.

On June 1st, 2012 while still at the 63rd Precint ACS Child Protective Specialist Charmaine McDonald stated to Plaintiff that Plaintiff is not a threat to Plaintiffs children.

ACS Child Protective Specialist Charmaine McDonald did not offer Plaintiff or Plaintiffs children any services.

ACS Child Protective Specialist Charmaine McDonald stated to Plaintiff that she will not be removing the children from Plaintiff.

Thereafter, Plaintiffs children were escorted to 1223 East 39th Street, Brooklyn, New York 11210 by ACS Child Protective Specialist Charmaine McDonald.

There were no other alleged incidents after May 24th, 2012.

There were no other alleged incidents after June 1st, 2012.

There was no evidence of Child Neglect on June 1st, 2012.

On June 2nd, 2012, Plaintiff was released from jail on ROR.

On June 2nd, 2012, it has been placed on court record that Plaintiffs child whom ACS report was made about will remain living at 1223 East 39th Street, Brooklyn, New York 11210 with her grandparents as per Judge Gerstein.

On June 2nd, 2012, Plaintiff was escorted to 1223 East 39th Street, Brooklyn, New York 11210 by two officers from the 63rd Precint to retrieve Plaintiffs belongings and two of her three children whom no ACS report was ever made about.

Plaintiff did not see Plaintiffs daughter whom report was made about from June 2nd, 2012 to June 15th, 2012. Therefore Plaintiff could not have placed her child in imminent danger. Plaintiffs child whom report was made about was residing with her grandparents at 1223 East 39th Street, Brooklyn 11210 in a safe and healthy environment.

*ACS Child Protective Specialist Charmaine McDonald removed Plaintiffs child whom report was made about from school without giving Plaintiffs child's grandparents notice.*

ACS Child Protective Specialist Charmaine McDonald removed Plaintiffs other two children from school as well without giving Plaintiff notice.

On June 1st, 2012, at 5:35p.m., Plaintiff was arrested for Robbery in the 2nd Degree/Aided by Another.
In the criminal file of this arrest that has been made it states:
Please take notice that the People intend to offer on their direct case at trial of this action testimony regarding an observation of the defendant either at the time and place of the commission of the offense or upon such other occasion relevant to the case by a witness who has previously identified the defendant(s), as specified below.
There is an ID Witness. The type of Identification Procedure is a Point Out. The Outcome of Procedure is Positive Identification.
This witness supposedly pointed out Plaintiff at the 63rd Precint.
The place where the alleged crime was committed is the home where Plaintiffs parents are currently residing.
Robbery in the 2nd Degree/Aided by Another is listed as Plaintiffs Top Charge on The New York State Unified Court Systems Website.
*<u>Plaintiff was never given a Miranda Warning on June 1st, 2012.</u>*

False Accusations of Neglect has been made against Plaintiff in Family Court by ACS Child Protective Specialist Charmaine McDonald on June 13th, 2012.
Plaintiff did not unreasonably inflict or allowed to be inflicted harm, or a substantial risk thereof, including the infliction of excessive corporal punishment on any of her children.
None of plaintiffs three children were in need of medical attention in regards to Child Neglect.
ACS Child Protective Specialist Charmaine McDonald did not make an effort to remove any of Plaintiffs three children prior to June 13th, 2012.
On or about June 1st, 2012, none of Plaintiffs children had any physical indicators of Neglect. On June 13th, 2012 when Petitions of Neglect was filed against Plaintiff, none of Plaintiffs children had any physical indicators of Neglect.
On or about June 1st, 2012, none of Plaintiffs children had any indicators of emotional or mental impairment. On June 13th, 2012, None of Plaintiffs children had any indicators of emotional or mental impairment.

On or about June 1st, 2012, none of Plaintiffs children had any indicators of educational neglect. On or about June 13th, 2012, none of Plaintiffs children had any indicators of educational neglect.
On or about June 1st, 2012, none of Plaintiffs children had any behavioral indicators of Neglect. On or about June 13th, 2012, none of Plaintiffs children had any behavioral indicators of Neglect.
On or about June 1st, 2012, Plaintiff did not have any behavioral indicators of Neglect. On or about June 13th, 2012, Plaintiff did not have any behavioral indicators of Neglect.

All three of Plaintiffs children have their immunizations up to date and has already received their physicals for the upcoming 2013 school year.
Plaintiff DOES NOT fail to provide her children with supervision or guardianship. Plaintiff is healthy in that Plaintiff DOES NOT suffer from a mental illness.
Plaintiff has stable residency for herself and her three children.
Plaintiff loves and nurtures her children. Plaintiff maintained their hygiene and always teaches her children to have respect for authorities.

False Accusations of Mental Illness has been made against Plaintiff in Family Court by ACS Child Protective Specialist Charmaine McDonald on June 13th, 2012.
ACS Child Protective Specialist Charmaine McDonald was aware that Plaintiff did not have any mental illness before she filed Petitions of Neglect against Plaintiff.
Plaintiff informed ACS Child Protective Specialist Charmaine McDonald that she does not suffer from any mental illness during the telephone conversation that was held on June 7th, 2012.
ACS Child Protective Specialist Charmaine McDonald was made aware on June 7th, 2012 of Plaintiff having documentation from JBH Behavioral Health Systems stating that Plaintiff does not suffer from any mental illness.
On or about June 15th, 2012, Plaintiff raised her hand in Family Court with the documentation from JBH Behavioral Health Systems and verbally stated " Your honor, I have proof right here that I don't have any mental illness"
One of the lawyers for one of Plaintiffs children then stood up and said "Your honor, I think Ms. Slater should have the legal right to know that she's entitled to a hearing."
A court date was scheduled for August 1st, 2012 at 10:00 a.m. before Plaintiff was ever made aware that Plaintiff was entitled to a 1028 hearing.
ACS Child Protective Specialist Charmaine McDonald informed Family Court that Plaintiff did tell her that Plaintiff has documentation from JBH Behavioral Health Systems stating that Plaintiff does not suffer from any mental illness.
ACS Child Protective Specialist Charmaine McDonald informed Family Court of this information during the 1028 hearing that was held beginning June 20th, 2012 and ended on June 29th, 2012.
ACS Child Protective Specialist Charmaine McDonald used Plaintiffs most recent Florida Department of Children and Families records to support her petitions of Neglect filed against the Plaintiff.
Most recent Florida Department of Children and Families records indicates Plaintiff has no Psychological symptoms.
False Accusations of Drug Abuse

During the 1028 hearing that was held From June 20th, 2012 until June 29th, 2012. Plaintiff was forced to testify in Family Court, with an open criminal case pending against her (Top Charge of Robbery in the 2nd Degree/Aided by Another).

During the 1028 hearing, Plaintiff was asked what drugs has she taken in the last 24 hours.

Plaintiff answered she had taken Mobix.

Plaintiff was prescribed Tylenol with codeine for a hand surgery that had taken place on June 26th, 2012.

Plaintiff was prescribed 10 pills and was told to take 1 to 2 every 4 to 6 hours.

Plaintiff started the medication on June 26th, 2012, taking the prescription as prescribed.

Plaintiffs last dose of medication was on the night of June 27th, 2012.

This clearly shows that Plaintiff did not deny any drug use. Any drugs other than Mobic would have had to been taken on June 28th, 2012 in order for Plaintiff to have denied any drug use.

Plaintiff answered question accordingly.

Plaintiff has a doctor's note from The Brookdale University Hospital and Medical Center stating that she underwent excision on June 26th, 2012 and that she was prescribed Tylenol with codeine.

ACS Child Protective Specialist Charmaine McDonald was made aware on June 7th, 2012 by Plaintiff that Plaintiff has documentation of having undergone a Forensic Drug Screen on May 31st, 2012. ACS Child Protective Specialist Charmaine McDonald was made aware on June 7th, 2012 by Plaintiff that the results were negative.

Prior to the Forensic Drug Screen on May 31st, 2012, Plaintiff had undergone a Forensic Drug Screen on August 31st, 2011. The results were negative.

Plaintiff currently holds documentation of haven taken the Forensic Drug Screen on August 30th, 2011.

On August 7th, 2012, New York City Administration for Child Services sent certified mail to Plaintiff. The Certified Mail that was sent to Plaintiff was a recommendation letter from ACS for Plaintiff to participate in services as part of a service plan.

The services recommended was for Plaintiff to attend an outpatient treatment program at The Flatbush Addiction Treatment Center.

The eligibility requirements for the program is that applicants must be 18 and over with an Axis 1 diagnosis of alcohol or drug abuse or dependence.

New York City Administration for Child Services never offered Plaintiff any services or recommendations for services until August 7th, 2012.

Plaintiff does not qualify for the services that were recommended by New York City Administration for Child Services.

Plaintiff has never been diagnosed with an Axis 1 diagnosis of alcohol or drug abuse or dependence.

**Plaintiffs Children Were Removed by ACS Child Protective Specialist Charmaine McDonald Without Just Cause.**

Plaintiffs children were removed from school by ACS Child Protective Specialist Charmaine McDonald after petitions for Neglect was filed against Plaintiff on June 13th, 2012.
There were no alleged incidents after May 24th, 2012.
There were no alleged incidents after June 1st, 2012.
ACS conducted investigation on June 1st, 2012 and did not have sufficient legal grounds to remove Plaintiffs children.
ACS did not have any legal grounds to remove Plaintiffs child whom the report was made about from school while she was residing at her grandparents home without notice.

ACS Child Protective Specialist Charmaine McDonald never offered Plaintiff or Plaintiffs children any type of services before children were removed by ACS Child Protective Specialist Charmaine McDonald.
The Report currently on file with the State Central Register states in the decision that Plaintiffs children will remain in the care of the Parent(s)/Caretaker(s).
The Safety Assessment Report is dated with the Assessment date of June 7th, 2012. The Report was printed June 13th, 2012 at 6:22:52 p.m. The Report was mailed to Plaintiff June 29th, 2012.

**Child Abuse and/or Neglect by New York City Administration for Childrens Services**

Plaintiffs Children are all Minors Under the age of Eighteen.

New York City Administration for Childrens Services violated Section 1012(f) of The Family Court Act in that Plaintiffs child and or childrens physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired.

Plaintiffs children are also being medically neglected.

On or about July 1st, 2012 One of Plaintiffs children ran away from Foster home. Plaintiffs child stayed out all night. Plaintiffs child went to a family friends house the day after she ran away crying hysterically indicating to a family friend that she does not want to go back to foster home. Plaintiffs child informed family friend while she was crying hysterically that she is so upset and scared because she was told by someone that her mother is abusing drugs. The 1028 hearing ended on June 29th, 2012. Plaintiffs child reacted to what she was told on July 1st, 2012.

New York City Administration for Children's Services had no knowledge of Plaintiffs child's whereabouts. New York City Administration for Children's Services failed to contact Plaintiffs child's parents or relatives when Plaintiffs child went missing. Plaintiff's child was missing for over 24 hours. Plaintiff contacted authorities when she received information that her child was missing from Foster home.

On August 2nd, 2012, One of Plaintiffs children called Plaintiff crying, stating that she wanted to come home to Plaintiff. Plaintiffs child also stated that she needed medical attention. Plaintiff had already spoken to Head of Household of the foster care home where Plaintiffs children are currently residing about the medical attention Plaintiffs child was in need of prior to August 2nd, 2012. Apparently, Plaintiffs child never received the medical attention needed.
Plaintiffs children missed several doctors appointments because they were wrongfully removed.

New York City Administration for Children's Services violated Section 1012(h) of The Family Court Act, in that Plaintiffs child and or children suffers from Emotional Neglect, Physical Neglect and have Behavioral Indicators of Neglect.

Because of New York City Administration for Children's Services inability to exercise a minimum degree of care toward the child or children, Plaintiffs child or children has a state of substantially diminished intellectual functioning in relation to failure to thrive and/or self destructive impulses, ability to think and reason including incorrigibility since Plaintiffs child or children has been placed in foster care.

There is positive indication of toxic exposure to Plaintiffs child and or children.

Plaintiffs child and or children are being influenced by older girls between the ages of eighteen and twenty that are in the foster home.
Plaintiffs child and or children are staying out all night until the next mornings with older girls that are in the foster care.
The older girls that are in the foster home where Plaintiffs children are currently residing has been getting into fights with gang members and influencing Plaintiffs child and or children to join them.
The Head of Household in where Plaintiffs child and or children are currently residing had to call police several times because gang members came to her house with weapons to attack Plaintiffs child and or children and or other girls that are in the foster home.

On August 2nd, 2012 at 8:41 p.m., Plaintiffs child whom ACS complaint was made about called Plaintiff crying, stating that she wants to come home to Plaintiff.

On August 3rd, 2012 at 3:15 p.m., Plaintiffs child whom complaint was made about called Plaintiff crying, stating that she wants to come home to Plaintiff.

On August 5th, 2012 at 11:19 a.m., Plaintiffs child whom complaint was made about sent Plaintiff a picture text message of all her hair shaved off.

On August 5th, 2012 at 4:53 p.m., Plaintiffs child called Plaintiff crying, stating that she wants to come home to Plaintiff because some girls are looking to kill her. Plaintiffs child told Plaintiff that the girls keep coming up to the foster home with weapons. Plaintiffs child was extremely scared and pleaded with Plaintiff to protect her.

On August 10th, 2012 at 9:10 a.m., Plaintiffs child whom complaint was made about called Plaintiff crying, stating that she wanted to come home to Plaintiff. Plaintiff asked Plaintiffs child " Did you tell your lawyer that you want to come home?" Plaintiffs child replied " I don't have my lawyers number and she hasn't called me in weeks."

There was a preliminary hearing scheduled to be held on August 13th, 2012. The preliminary hearing was rescheduled for September 5th, 2012.

Plaintiffs child and or children has been introduced to alcohol and marijuana by older girls between the ages of eighteen and twenty that are residing in the foster home.

One of Plaintiffs children smoked marijuana with one of the older girls in the foster home in front of her siblings.

Plaintiffs child and or children has been exposed to alcohol.

***Plaintiffs child and or children and other girls from foster care home where Plaintiffs children are currently residing has been subjected to exposure on a website that promotes nudity.***

***Plaintiffs child and or children are being publicly viewed on a website, where Plaintiffs child and or children is posing in a picture with an adult male who promotes nudity on his website, which is the same website, Plaintiffs child and or children are being viewed on.***

***PLAINTIFF HAS EVIDENCE***

**The Behavioral Indicators of Neglect include Age- Inappropriate Behavior and use of Alcohol and Drugs.**

### THE 1028 HEARING WAS HELD FROM June 20th, 2012 UNTIL JUNE 29TH, 2012.
### PLAINTIFF ALLEGEDLY CLAIMS THE JUDGE IN THIS CASE, RULED ON A HEARING THAT HAD NO PROBABLE CAUSE. PLAINTIFF COULD NOT UNDERSTAND WHY ANY OF HER EVIDENCE WAS NOT CREDIBLE IN COURT WHEN PLAINTIFF HAD AN ATTORNEY.

### PHONE CALLS WITH PLAINTIFF AND ACS CHILD PROTECTIVE SPECIALIST CHARMAINE MCDONALD

On June 5th, 2012 ACS Child Protective Specialist Charmaine McDonald called Plaintiff and left Plaintiff a recorded message on voicemail requesting that Plaintiff calls her back.

On June 5th, 2012 at 10:27 a.m., Plaintiff returned ACS Child Protective Specialist Charmaine McDonald's call and left a message.

On June 5th, 2012, ACS Child Protective Specialist Charmaine McDonald visited Plaintiffs children at their school to question them again.

On June 5th, 2012, One of Plaintiffs children informed ACS Child Protective Specialist that Plaintiff does not use drugs or alcohol.

On June 5th, 2012, ACS Child Protective Specialist Charmaine McDonald informed one of Plaintiffs children that ACS Child Protective Specialist Charmaine McDonald will not be removing her and her siblings from Plaintiff.

ACS Child Protective Specialist Charmaine McDonald did not return Plaintiffs call on June 5th, 2012. However ACS Child Protective Specialist Charmaine McDonald did visit Plaintiffs children at school on this day.

ACS Child Protective Specialist Charmaine McDonald did not return Plaintiff's call on June 6th, 2012.

On June 7th, 2012 at 11:19 a.m., Plaintiff called ACS Child Protective Specialist Charmaine McDonald because ACS Child Protective Specialist Charmaine McDonald never returned Plaintiffs call from June 5th, 2012.

During this phone conversation, Plaintiff and ACS Child Protective Specialist Charmaine McDonald went over a Safety Plan for all three of Plaintiffs children.

On June 7th, 2012, Plaintiff informed ACS Child Protective Specialist that all three of Plaintiffs children are currently under child custody court orders subjected to visitation with their fathers.

On June 7th, 2012, Plaintiff informed ACS Child Protective Specialist Charmaine McDonald that One of Plaintiffs children will remain residing with her grandparents until Plaintiffs child exercises court ordered visitation on June 28th, 2012.

On June 7th, 2012, ACS Child Protective Specialist Charmaine McDonald asked Plaintiff if Plaintiff suffers from any mental illness.
Plaintiff responded to ACS Child Protective Specialist Charmaine McDonald that she does not suffer from any mental illness.
On June 7th, 2012, Plaintiff informed ACS Child Protective Specialist Charmaine McDonald that Plaintiff has documentation available from JBH Behavioral Health Systems indicating that Plaintiff does not suffer from any mental illness.
On June 7th, 2012, Plaintiff informed ACS Child Protective Specialist Charmaine McDonald that Plaintiff does not use or abuse alcohol or drugs.
On June 7th, 2012, Plaintiff informed ACS Child Protective Specialist Charmaine McDonald that Plaintiff has documentation available indicating that she has undergone a Forensic Drug Screen on May 31st, 2012 for purposes of employment.
On June 7th, 2012, Plaintiff informed ACS Child Protective Specialist Charmaine McDonald that the results from the drug testing were negative.
On June 7th, 2012, Plaintiff informed ACS Child Protective Specialist Charmaine McDonald that Plaintiff has a certificate of completion of Parenting Program.
On June 7th, 2012, The phone call that began at 11:19 a.m. ended. The call lasted exactly 19 minutes and 17 seconds.
On June 7th, 2012 at 12:30 p.m., Plaintiff called ACS Child Protective Specialist Charmaine McDonald to ask her if she was going to be removing Plaintiffs children. ACS Child Protective Specialist Charmaine McDonald responded in the exact words "No, If I was going to remove them, I would have done it a long time ago."
This call lasted exactly 1 minute and 56 seconds.
On June 7th, 2012, ACS Child Protective Specialist Charmaine McDonald did not offer Plaintiff any services.
On June 12th, 2012 at 9:34 a.m., ACS Child Protective Specialist Charmaine McDonald called Plaintiffs cell phone while Plaintiffs cell phone was in Plaintiffs handbag. Plaintiffs cell phone answered by itself from physical motions by Plaintiff while Plaintiffs cell phone was in Plaintiffs handbag.
Plaintiff was using public transportation. The vehicle had a lot of passengers.
When Plaintiff reached in her handbag to retrieve her cell phone, Plaintiff realized the call had been answered. Plaintiff immediately hung up the phone.
Three minutes later at 9:37 a.m., Plaintiff returned the call to ACS Child Protective Specialist Charmaine McDonald. ACS Child Protective Specialist Charmaine McDonald did not answer the phone.
On June 12th, 2012 at 9:46 a.m., Plaintiff attempted to call ACS Child Protective Specialist Charmaine McDonald back again. Plaintiff hung up

the phone before it rung since ACS Child Protective Specialist Charmaine McDonald did not answer Plaintiffs call at 9:37 a.m.

***THE NEXT DAY ON JUNE 13TH, 2012, ACS CHILD PROTECTIVE SPECIALIST CHARMAINE MCDONALD FILED THREE CHILD NEGLECT PETITIONS AGAINST PLAINTIFF IN FAMILY COURT. ALL THREE PETITIONS THAT WERE FILED AGAINST PLAINTIFF WERE IDENTICAL.***

All three of the petitions that were filed against Plaintiff alleges that Plaintiffs children under the age of eighteen whose physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of the Plaintiff, to exercise a minimum degree of care, in that
Plaintiff fails to provide her children with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or a substantial risk thereof, including the infliction of excessive corporal punishment on One of Plaintiffs Children.
All three of the petitions that were filed against Plaintiff alleges that Plaintiff fails to provide the children with proper supervision or guardianship in that she suffers from a mental illness which impairs her ability to care for her children.

**MALICIOUS PROSECUTION WITH SINS OF COMMISSION AND OMISSION**

ACS Child Protective Specialist Charmaine McDonald filed three Child Neglect Petitions against Plaintiff on June 13th, 2012.
ACS Child Protective Specialist Charmaine McDonald had no probable cause to file three cases of Child Neglect against Plaintiff.
Plaintiff alleges that ACS Child Protective Specialist Charmaine McDonald filed three petitions of Child Neglect against Plaintiff on hostile impulse or out of deep seated meanness because Plaintiff hung up on ACS Child Protective Specialist Charmaine McDonald on June 12th, 2012 as per phone records. ACS Child Protective Specialist Charmaine McDonald did not call Plaintiff back on June 12th, 2012 after Plaintiff hung up on her although Plaintiff called her back. ACS Child Protective Specialist Charmaine McDonald did not call Plaintiff before she filed the Child Neglect Petitions against Plaintiff on June 13th, 2012 which was the next day.
Plaintiffs alleges that ACS Child Protective Specialist Charmaine McDonald had evil intentions against Plaintiff.

The results indicating that Plaintiff has no diagnosis of mental illness was faxed directly to Florida Department of Children and Families on July 22nd, 2010 at 1:47 p.m. from JBH Behavioral Health Systems.

Plaintiff has a copy of the documentation of successful fax sent to Florida Department of Children and Families from JBH Behavioral Health Systems.

Florida Department of Children and Families has documentation in most recent reports that Plaintiff does not suffer from any mental illness. Florida Department of Children and Families were the ones who referred Plaintiff for a mental health evaluation at JBH Behavioral Heath Systems in 2010.

ACS Child Protective Specialist Charmaine McDonald used the records from Florida Department of Children and Families to support the Petitions of Child Neglect that she filed against Plaintiff. Therefore, Plaintiff alleges that ACS Child Protective Specialist Charmaine McDonald had to have known that Plaintiff does not suffer from any mental illness.

Plaintiffs children's ACS Caseworkers were changed on August 17th, 2012.

On August 23rd, 2012, Plaintiff went to visit her children at The Foster Care Agency.

Plaintiff signs the book at the front entrance on every visit. However, it wasn't until August 23rd, 2012 that Plaintiff was told by two ACS caseworkers that Plaintiff needed to sign an appointment book that was located inside one of the facilities at the agency.

Plaintiff told the two ACS caseworkers that Plaintiff was never told to sign the book. Plaintiff asked one of the caseworkers" Why was I never told to sign this book?" ACS caseworker replied to Plaintiff with a question "Well you signed the book in the front right?" Plaintiff replied "Yes." ACS caseworker then stated "Well you don't have to worry about it then."

After Plaintiff signed the book, the ACS caseworkers that were supervising the visit stated to Plaintiff that if one of Plaintiffs children did not want to see Plaintiff that Plaintiffs child didn't have to and that Plaintiff could not force her. ACS caseworkers were referring to Plaintiffs child whom complaint was made about.

Plaintiff did not say anything in reference to the statements that were made by ACS.

Plaintiff knew that Plaintiffs child wanted to see her, because Plaintiffs child keeps calling Plaintiff crying stating that she wants to come home.

All of Plaintiffs children has called Plaintiff on numerous occasions crying to Plaintiff that they want to come home to Plaintiff.

When Plaintiff exited the building with one of Plaintiffs children, the two ACS caseworkers that were supervising the visit were approximately five feet behind Plaintiff.

Plaintiffs asked Plaintiffs child " Does Plaintiff child want to see Plaintiff?"

Plaintiffs child responded " Yes, she wants to see you!"

As Plaintiffs child ran toward one of the facilities to go get her sibling to tell her sibling that Plaintiff was outside waiting for her.

The two ACS caseworkers started to get aggressive, yelling and running after Plaintiffs child screaming" NO, DON'T GO IN THERE!"

Before Plaintiffs child could take a third step toward the building to go get her sibling.

Plaintiffs other child ran outside of the facility crying hysterically non- stop saying "MOMMY, I WANT TO COME HOME!"

Plaintiff replied to Plaintiffs child, "DON'T CRY, YOU COMING HOME SOON."

The two ACS caseworkers just stood there and looked.

The two ACS caseworkers are witnesses to this incident.

Plaintiff walked away towards the park at the agency with her children.

One of the ACS caseworkers then walked over to Plaintiff and told Plaintiff that she would be shortening Plaintiffs visit with her children by half an hour.

Plaintiff replied to ACS caseworker" You told me I was scheduled till 3:30p.m."

ACS caseworker replied to Plaintiff, "No, I told you 3:00p.m."

Plaintiff replied to ACS caseworker, "No, you told me 3:30p.m. You told me there was a meeting scheduled for 3:30p.m."

ACS caseworker told Plaintiff "I, told you 3:00p.m. because the children need to go to get their medical appointments done.

Although Plaintiff was told 3:30 p.m., Plaintiff said "Okay", and walked away towards the park with her children.

During this visit on August 23rd, 2012, One of Plaintiffs children said to Plaintiff "My Law Guardian finally called me a few days ago, and I told her that I want to come home."

Plaintiffs child also stated that the Law Guardian told her " We will see what happens when we go to court."

Plaintiffs other child also stated that she told her Law Guardian that she also wants to come home to Plaintiff.

<u>*On August 23rd, 2012, ACS removed all the children from the foster care home where Plaintiffs children were residing. Plaintiffs children were moved to another foster care home. Plaintiffs child told Plaintiff that the foster care home where they were residing will not be able to have any more foster children living there.*</u>

Plaintiff was walking Plaintiffs children towards one of the facilities because the visit was almost over. As Plaintiff and Plaintiffs children were walking, ACS caseworkers supervisor and ACS caseworker walked over to Plaintiff and Plaintiffs children to introduce herself to Plaintiff.
ACS supervisor stated "I feel love in the air"
The ACS supervisor explained to Plaintiff that the new ACS caseworker that Plaintiffs children had gotten on August 17th, 2012 would be Plaintiffs children's new ACS caseworker.
ACS supervisor gave Plaintiff her extension and told Plaintiff that Plaintiff could contact her if she needed to.
Plaintiff then told her children that she loves them.
Plaintiff also kissed and hugged her children.
Plaintiff told her children to make sure they read their Bibles.
Plaintiff told her children to be good.
Plaintiff told her children that Plaintiff will schedule another appointment to see them very soon.
Plaintiff asked ACS caseworker if Plaintiff can schedule another appointment.
ACS caseworker told Plaintiff that she will get in contact with Plaintiff next week to schedule another appointment.
Plaintiff then asked ACS caseworker if ACS caseworker can call Plaintiff tomorrow to schedule another appointment.
ACS caseworker told Plaintiff that ACS caseworker will have to look at her schedule to see what it looks like.
Plaintiff thanked the ACS caseworker and ACS caseworkers supervisor.
Plaintiff told Plaintiffs children that she loves them.
Plaintiff then kissed and hugged her children again, and then left the Foster Care Agency.
There were cameras inside and outside of the foster care facility where Plaintiff and Plaintiffs children were standing.

*On August 21st, 2012, at 11:07,Plaintiff called the new ACS caseworker to schedule an appointment to visit Plaintiffs children. Plaintiff requested visit to be held on Thursday August 23rd, 2012. ACS caseworker told Plaintiff, that Thursday August 23rd, 2012 would not be a good day for her.*

*The visitation was then scheduled for Friday, August 24th, 2012.*

*ACS caseworker called Plaintiff on Wednesday August 22nd, 2012 at 1:48p.m. telling Plaintiff that the visit will be held on Thursday from 1:00p.m. until 3:30p.m.*

*Plaintiff said to ACS caseworker "I thought it was scheduled for Friday."*

*ACS caseworker stated to Plaintiff "I am trying to see if the Foster Care Lady can bring the children earlier because we are going to have a meeting."*

*Plaintiff asked " What time will the visitation be?"*

*ACS caseworker responded "1:00p.m. to 3:30p.m., The meeting will be at 3:30p.m. after the visit.*

*Plaintiff asked ACS caseworker " What is the visit about? Is it about my children?"*

*ACS caseworker replied" The meeting is about your children, but I don't know if your children are going to be attending the meeting. They have to go get their medicals done."*

*On August 23rd, 2012, Plaintiffs visit was shortened one half hour by ACS caseworker so that Plaintiffs children could finally get their medicals done.*

*ACS caseworker claimed she informed Plaintiff, stating they had to get their medicals done at 3:00.*

*However, Plaintiff claims she was told 3:30p.m.*

*Plaintiff was told by ACS caseworker that the meeting was being held at 3:30p.m.*

*One of Plaintiffs children told Plaintiff that the meeting was being held at 4:00p.m.*

*Plaintiffs visit was shortened a half an hour by ACS caseworker immediately after Plaintiffs child ran out of facility crying to Plaintiff that she wants to come home.*

**BEFORE PLAINTIFFS CHILDREN WERE REMOVED**

Before Plaintiffs children were removed, none of them used any drugs or alcohol. Plaintiffs children went to church faithfully every Sunday morning and Wednesday evenings. Plaintiffs children hold Certificates of Baptism and are Christian girls. Certificates of Baptism are dated October 23rd, 2011. Plaintiffs children attended school regularly and they all received good grades .One of Plaintiffs children has a cumulative average of 83.82%. She has earned all of her credits to be promoted to the next grade. Plaintiff was seeking scholarships for her before she was moved and is still currently seeking scholarships for her to attend college. Another one of Plaintiffs children has received an offer to be in a Gifted Program. She has been awarded two scholarships this year and has received numerous awards for outstanding achievement, including an award from Councilman Jumaane Williams of the 45th District. She was also promoted to the next grade. Lastly, Plaintiffs other child has also been promoted to the top class of her next grade. She has received awards for Honor Roll and Student of The Month. Plaintiffs children were recognized in the community as being well mannered and respectful. Plaintiffs children has always been loved and nurtured by Plaintiff and still are.

*PLAINTIFF*

Plaintiff is a very well organized person. Plaintiff is registered with The New York State Department of Health as a Rape Crisis Counselor. Plaintiff received Certification on May 20th, 2012. Plaintiff does volunteer work for The Anti-Violence Project. Plaintiff is a Christian and holds a Certificate of Baptism dated June 8th, 2011. Plaintiff attends church faithfully every Sunday and Wednesday evenings. Plaintiff is a student at John Jay College of Criminal Justice. Plaintiff is majoring in Forensic Psychology and minoring in Humanities and Justice. Plaintiff holds an Associate of Science Degree in Paralegal Studies. Plaintiff is currently studying to take the Certified Paralegal Exam. Plaintiff is a delegate for Councilman Jumaane Williams of the 45th District. Plaintiff is also involved in community and fundraiser events for candidate for State Committeeman Victor Jordan of the 42nd Assembly District. Plaintiff is recognized in her community as an involved parent. Plaintiff attended school trips and PTA meetings regularly. Plaintiff took her children to the library on a regular basis. Plaintiff has been seeking to serve as a youth mentor for The Youth and Congregations in Partnership Program(YCP) which was founded by Kings County District Attorney Charles J Hynes since mid May 2012. Plaintiff is also seeking to serve as a youth mentor for the (GRASP) Program, which is The Girls Re-Entry Assistance Support Project. This program was also founded by Kings County District Attorney Charles J Hynes. Plaintiff is unable to serve as a youth mentor in any of the programs because Plaintiff is listed on file in The New York State Child

Abuse and Maltreatment Register until her youngest child turns twenty-eight. Plaintiff was looking forward to Mentor training in August of this year. Plaintiff is also listed on the New York Unified Courts System with a Top Charge of Robbery in the Second Degree/ Aided by Another. Plaintiff is extremely hurt from what society has done to her and her children. Plaintiff has endured character assassination. Plaintiff and plaintiffs children are embarrassed. Plaintiff misses her children very much. Plaintiffs children are missing Plaintiff. All three of plaintiffs children wants to go home to Plaintiff.

4. The items of damages, including punitive, sustained by NATASHA SLATER, one-hundred million ($100,000,000.00) dollars for actual damage, mental anguish, emotional distress and psychological trauma.

Action is commenced thereon.

Dated: New York, NY
The 28th day of Aug 2012

Respectfully yours,

_____
NATASHA SLATER
(718) 576-4945
910-131 315

State of New York )
Kings
County of New York ) Ss.:

On August 28th, 2012 before me, the undersigned, personally appeared NATASHA SLATER, personally know to me or provided to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument be the individuals described in and who executed the foregoing and duly acknowledged to me that he executed it.

MICHAEL PICCININNI
Notary Public, State of New York
No. 01PI6033812
Qualified in Kings County
Commission Expires November 29, 20 13