UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

NATASHA SLATER,

          Plaintiff,

-against-

P.O. KAREN MACKEY #2267, Tax ID 4000, 63rd
Precinct, NYPD; P.O. DANIEL YOUNG, Tax ID
4000, 63rd Precinct, NYPD; THE CITY OF NEW
YORK; NEW YORK CITY POLICE
DEPARTMENT, 63RD PRECINCT; CHARMAINE
MCDONALD, Child Protective Specialist, ACS
#6666517, Unit#: 181-3; NEW YORK CITY
ADMINISTRATION FOR CHILD SERVICES,
DCP/BROOKLYN FIELD OFFICE,

          Defendants.
-----------------------------------------------------------------X

**MEMORANDUM & ORDER**

**12-CV-4325 (NGG) (ST)**

NICHOLAS G. GARAUFIS, United States District Judge.

Pro se Plaintiff Natasha Slater initiated this action against various municipal officials and entities, bringing several claims under 42 U.S.C. § 1983 and state law relating to her 2012 arrest and subsequent protection proceedings involving her three minor children. (See Am. Compl. (Dkt. 16).) In an order dated November 9, 2015 (the "2015 Order"), all but one of Plaintiff's claims were resolved by dismissal or summary judgment in favor of Defendants. (Nov. 9, 2015, Mem. & Order (Dkt. 38).) In Plaintiff's sole surviving claim, she argues that Defendant Charmaine McDonald made false allegations about Plaintiff's mental health during the child protection proceedings. (Id. at 34.) McDonald has submitted additional evidence and moved for summary judgment on this claim. (McDonald's Mot. for Summ. J. ("McDonald's Mot.") (Dkt. 54).) For the reasons stated below, McDonald's Motion is GRANTED. The court notes that Plaintiff's opposition papers appear to assert a new procedural due process claim that was

1

not included in the Amended Complaint. (Pl.'s Mem. in Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Opp'n") (Dkt. 61) at 3-8.) Any such claim is DISMISSED as procedurally barred.

I.  BACKGROUND

The court assumes familiarity with the background of this case, as described in the 2015 Order.[1] This section briefly reviews the factual allegations and procedural history that underlie Plaintiff's surviving cause of action.

### A. Factual Allegations

Plaintiff was arrested on June 1, 2012, and charged with crimes including assault on her minor child. (2015 Order at 4-6.) All criminal charges were eventually dropped, but the New York City Administration for Child Services ("ACS") continued to investigate the allegations that Plaintiff had assaulted her child. (Id. at 6-7.) During that investigation, ACS discovered that Plaintiff had case files with ACS's counterpart agencies in Florida and Texas. (Id. at 7.) ACS requested and received copies of those records. (Id.)

"On June 13, 2012, ACS brought three substantively identical Petitions of Neglect against [Plaintiff], one for each" of Plaintiff's minor children (collectively, the "Neglect Petitions"). (Id.) "Each Neglect Petition alleged that: (1) [Plaintiff] threatened the child's safety because she engaged in excessive corporal punishment . . . , and (2) [Plaintiff] suffers from a mental illness, which impairs her ability to care for her children." (Id. at 7-8.)

### B. Plaintiff's Misrepresentation Claim and the 2015 Order

In the Amended Complaint, Plaintiff accuses Defendants of falsely "alleging that Plaintiff is unable to take care of her children due to bipolar and/or schizophrenia," despite the absence of "any confirmation or any evidence of a diagnosis of Plaintiff by medical expertise." (Am.

---

[1] The 2015 Order cites extensively to the record. In this opinion, citations to the factual findings in the 2015 Order omit all references to such record citations.

2

Compl. at ECF pp.14-15.) Plaintiff alleges that, at the time the Neglect Petitions were filed, "Defendants[] were fully aware that the Plaintiff was not suffering from any mental illness." (Id. at ECF p.14.) In the 2015 Order, the court construed these allegations as "presenting a due process violation" on the grounds that, "because of ACS's false statements, [Petitioner's] children were removed." (2015 Order at 28.) The court determined that McDonald, an ACS Child Protection Specialist, was entitled to qualified immunity absent a showing that any "alleged misrepresentations were sufficiently material and serious to render the removal process constitutionally defective." (Id. (citation omitted).) The court found "a genuine issue of material fact regarding precisely what documents [ACS] received and precisely what formed the basis of the Neglect Petitions." (Id. at 29.) The court therefore declined to grant summary judgment "at [that] stage" on Plaintiff's claim of misrepresentations about her mental health." (Id.)

All the other claims in the Amended Complaint were either dismissed without prejudice or resolved on summary judgment in favor of Defendants. (Id. at 33-34.) The court stated that, "[s]hould [Plaintiff] wish to address the pleading defects" in any of her dismissed claims, "she is instructed to file a Second Amended Complaint by December 15, 2015." (Id. at 34 (footnote omitted).) Plaintiff has not filed a Second Amended Complaint, and the time to do so has long passed.

## II. DISCUSSION

Plaintiff's central allegation is "that McDonald made false statements in the Neglect Petitions and in Family Court concerning [Plaintiff's] mental health." (2015 Order at 27.) McDonald has now submitted documentary evidence that substantiates the allegations in the Neglect Petitions. Plaintiff has failed to meaningfully contest this evidence. The court therefore finds that McDonald's Motion for Summary Judgment must be granted on grounds of qualified immunity. In addition, the court notes that Plaintiff's opposition papers appear to raise a new

3

procedural due process claim alongside Plaintiff's arguments about false statements. This new claim is procedurally barred and, in any event, lacks merit.

**A. Legal Standards**

1. <u>Summary Judgment</u>

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A 'material' fact is one capable of influencing the case's outcome under governing substantive law, and a 'genuine' dispute is one as to which the evidence would permit a reasonable juror to find for the party opposing the motion." <u>Figueroa v. Mazza</u>, 825 F.3d 89, 98 (2d Cir. 2016) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). The court is conscious of its obligation to "construe briefs submitted by <u>pro se</u> litigants liberally." <u>Ferran v. Town of Nassau</u>, 471 F.3d 363, 369 (2d Cir. 2006) (citation omitted).

2. <u>Qualified Immunity for Child Protective Service Workers</u>

"It is well settled that child protective services workers are entitled to qualified immunity for their conduct during the course of abuse investigations." <u>Walker v. City of New York</u>, 621 F. App'x 74, 75 (2d Cir. 2015) (summary order) (alterations omitted) (quoting <u>Wilkinson ex rel. Wilkinson v. Russell</u>, 182 F.3d 89, 99 (2d Cir. 1999)). "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." <u>Ricciuti v. Gyzenis</u>, 834 F.3d 162, 167 (2d Cir. 2016) (internal citation marks omitted) (quoting <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 735 (2011)).

"It [is] clearly established that it violates due process under the Fourteenth Amendment for a government official to give false testimony in a state court proceeding." <u>Velez v. Reynolds</u>, 325 F. Supp. 2d 293, 316 (S.D.N.Y. 2004) (citing <u>Napue v. Illinois</u>, 360 U.S. 264, 270 (1959)).

4

Even so, in recognition of the "'need for unusual deference in the abuse investigation context,'" the Second Circuit has adopted a "deferential standard[:] '[a]n investigation passes constitutional muster provided simply that case workers have a reasonable basis for their findings of abuse. At the same time, case workers are not 'free to substantiate a claim of abuse ... by ignoring overwhelming exculpatory information or by manufacturing false evidence.'" Walker, 621 F. App'x at 75-76 (internal quotation marks omitted) (quoting Wilkinson, 182 F.3d at 104).

### B. Plaintiff's Section 1983 Misrepresentation Claim

McDonald has submitted evidence to substantiate the claims made in the Neglect Petitions. Plaintiff objects to that evidence on several grounds. The court finds those objections unpersuasive. McDonald is therefore entitled to qualified immunity because Plaintiff has failed to show that McDonald violated a clearly established right. The court grants summary judgment in favor of McDonald on Plaintiff's Section 1983 claim.

1. McDonald's Evidence in Support of the Claims in the Neglect Petitions

The Neglect Petitions stated that, according to "records from the Florida Department of Children and Families [("DCF"),] [Plaintiff] has been diagnosed with bi-polar disorder and prescribed Zoloft and Trazodone and was supposed to be engaged in therapy. According to Florida records the respondent mother was hospitalized at Brookdale Hospital Psychiatric Center." (Neglect Pets. (Am Compl. Ex. 1 (Dkt. 16-1)) at ECF pp.64, 71, 79.) In the 2015 Order, the court found that "[t]his statement [was] not an accurate summary of the mental health evaluation from Florida" that was available to the court at that time. (2015 Order at 29.)

McDonald has since submitted DCF records that substantiate each of the representations in the Neglect Petitions. (See McDonald's Rule 56.1 Statement[2] (Dkt. 56) ¶ 9 (citing to DCF

---

[2] Plaintiff's opposition papers did not include a responsive Rule 56.1 Statement, as required by Local Civil Rule 56.1(b). The court notes that Plaintiff was furnished copies of both Local Rule 56.1 and Federal Rule of Civil

records[3]).) McDonald asserts that, at the time she filed the Neglect Petitions, she "did not have any information suggesting that the summary of Plaintiff's mental health history contained in the Florida DCF records was incorrect or inaccurate in any respect." (Id. ¶ 10.) Indeed, one of Plaintiff's own children told ACS that Plaintiff "had a history of mental health conditions." (Id. ¶ 4.) McDonald argues, therefore, that she "did not make any misstatements, let alone the 'extreme' or 'material and serious' misstatements, necessary to override the qualified immunity afforded to her." (McDonald's Mem. in Supp. of Mot. for Summ. J. (Dkt. 55) at 6 (citations omitted).)

2. Plaintiff's Response

Plaintiff raises three objections, none of which is sufficient to deprive McDonald of qualified immunity. Plaintiff first notes that, in response to ACS questioning, she stated that she had previously tested negative for mental health issues, and that she refused to sign a form authorizing ACS to access her health records at certain facilities. (Pl.'s Opp'n at 8-9.) ACS was not obligated to rely on Plaintiff's representations, however. McDonald's investigation properly accounted for all legally available evidence, including DCF records and recent statements from Plaintiff's own children.

Second, Plaintiff notes that some of the cited DCF records were created in 2009. (Pl.'s Opp'n at 10.) Plaintiff argues that the Neglect Petitions, filed in 2012, improperly included

---

Procedure 56. (Notice to Pro Se Litigant Who Opposes a Mot. for Summ. J. (Dkt. 58) at 3-5.) Therefore, "[t]o the extent the facts in [McDonald's] Rule 56.1 statement are not directly addressed by [Plaintiff], they are deemed undisputed for the purpose of the summary judgment motion." Petrucelli v. Hasty, 605 F. Supp. 2d 410, 418 (E.D.N.Y. 2009); see also Local Civil Rule 56.1(c). "In recognition of Plaintiff's pro se status," however, the court will "cite to Plaintiff's [Amended] Complaint" and other filings "to identify places in which Plaintiff's allegations go beyond the existing record." Paul v. Postgraduate Ctr. for Mental Health, 97 F. Supp. 3d 141, 150 (E.D.N.Y. 2015).

[3] McDonald filed copies of the faxed DCF materials under seal, pursuant to the court's order of August 15, 2016 (Dkt. 65). Citations to these and other sealed documents have been omitted throughout except as otherwise indicated.

information about diagnoses and treatments from "previous times." (Id.) The Neglect Petitions did not allege ongoing treatment, however. The Neglect Petitions merely conveyed information about Plaintiff's prior diagnoses, prescriptions, and hospitalizations. (See Neglect Pets. at ECF pp.64, 71, 79 (Plaintiff "has been diagnosed with bi-polar disorder and prescribed" medications, and she "was hospitalized" in the past at a particular psychiatric facility. (emphasis added)).)

Plaintiff's final objection is that the Neglect Petitions do not accurately reflect her records. This claim bears closer scrutiny, since willful inaccuracies by McDonald may preclude qualified immunity. Certain among Plaintiff's examples are without merit because they attack the DCF records themselves rather than McDonald's summary thereof. For example, the DCF records state that Plaintiff "sees Dr. Buthman at Family Health Center for bi-polar disorder." (McDonald's Reply (Dkt. 63) at 5 (quoting DCF records filed under seal).) Plaintiff argues that she "was never seen by Dr. Buthman for bipolar" disorder, citing to medical records of visits with Dr. Buthman in 2009 and 2010 that make no mention of a bipolar diagnosis. (Pl.'s Opp'n at 11 (citing to medical records filed under seal).) Even if Plaintiff is correct, however, the inaccuracy lies with the DCF records, not with McDonald's representations as to the contents of those records.

More concerning to the court is Plaintiff's contention that the Neglect Petitions create a misleading impression by citing facts out of context. The Neglect Petitions state that Plaintiff "has been diagnosed with bi-polar disorder and prescribed Zoloft and Trazodone and was supposed to be engaged in therapy." (Neglect Pets. at ECF pp.64, 71, 79.) The DCF records clearly indicate, however, that Plaintiff was "prescribed Trazodone for insomnia." (Pl.'s Opp'n at 10 (emphasis added) (quoting from DCF records filed under seal).) McDonald attempts to sidestep the issue, arguing that the Neglect Petitions merely stated a series of facts: DCF records

unequivocally show that Plaintiff was, at various times, (1) diagnosed with bi-polar disorder, (2) prescribed Zoloft, and (3) prescribed Trazodone. (McDonald's Reply at 5.) By pairing a diagnosis with a list of prescription medications, however, the Neglect Petitions yield the reasonable interpretation that the listed medications were prescribed <u>for</u> the listed diagnosis. The Neglect Petition goes on to say that Plaintiff "was supposed to be engaged in therapy," another statement that presumably relates to Plaintiff's bipolar disorder, the only diagnosis listed.

The court is troubled by McDonald's decision to mention the Trazodone prescription in the context of a statement about Plaintiff's bipolar diagnosis, and without any indication that the prescription was for a separate condition. Nonetheless, the court finds that this omission, standing alone, does not rise to the level of a willful misrepresentation that would deprive McDonald of qualified immunity. The Neglect Petitions were replete with well-documented evidence of physical abuse. (See 2015 Order at 27 (McDonald "had probable cause to believe that [Plaintiff] had engaged in excessive corporal punishment.").) The addendum discussing Plaintiff's mental health accurately summarizes the DCF records as to Plaintiff's bipolar diagnosis and general treatment history. Omitting the insomnia indication does not undermine the "reasonable basis for [ACS's] findings of abuse," nor does it rise to the level of "ignoring overwhelming exculpatory information or [] manufacturing false evidence." Walker, 621 F. App'x at 75-76 (internal quotation marks and citations omitted). The court therefore finds that McDonald is entitled to qualified immunity.

### 3. Conclusion

The court finds that Plaintiff has failed to show a genuine dispute of material fact as to McDonald's entitlement to qualified immunity. Therefore, the court grants summary judgment in favor of McDonald on Plaintiff's Section 1983 misrepresentation claim.

## C. The New Claim Asserted in Plaintiff's Opposition Papers

Plaintiff's opposition papers appear to raise a new procedural due process challenge to ACS's investigation and child protection proceedings. (See Pl.'s Opp'n at 3-8.) Plaintiff asserts that she was "entitled to notice of the charges against her, an explanation of the evidence that ACS had, and an opportunity to present her side of the story before [ACS sought] removal" of her children. (Id. at 3-4.) Plaintiff specifically alleges that some—but not all—of her child's bruises were the result of prior injuries unrelated to any abuse by Plaintiff, and that Plaintiff should have been permitted to present evidence to that effect before ACS sought an ex parte injunction and removal order. (Id. at 5-7.) This argument is procedurally barred. Even if it were not, Plaintiff has failed to state a claim that would overcome McDonald's qualified immunity.

1. Procedural Bar

In the Amended Complaint, Plaintiff made virtually identical allegations concerning photographic evidence of her child's bruises, but styled as a due process challenge under a theory of "fraud on the court." (See Am. Compl. at ECF p.15 ("[T]he pictures that ACS had in evidence were pictures of old bruises. . . . Plaintiff informed the [Family] Court that she [had] pictures . . . indicating that the bruises [were] old.").) That claim was dismissed without prejudice in the 2015 Order on the grounds that Plaintiff had "neither alleged, nor produced evidence indicating, that ACS or McDonald knew or had reason to know that the photographs that they submitted to the family court were false." (2015 Order at 29-30.) The court instructed Plaintiff to amend her complaint by December 15, 2015, should she wish to cure any defects (id. at 34), but Plaintiff failed to do so.

Plaintiff now attempts to revive that same claim, repackaged as a procedural due process violation based on lack of notice and opportunity to respond. However, "[a] party may not use his or her opposition to a dispositive motion as a means to amend the complaint." Shah v. Helen

9

Hayes Hosp., 252 F. App'x 364, 366 (2d Cir. 2007) (summary order) (citing Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998)). Plaintiff declined to amend her complaint at the appropriate time, and may not do so at this stage of the proceedings. Plaintiff's newly asserted procedural due process claim is therefore dismissed.

### 2. Lack of Merit

The court notes that Plaintiff's procedural due process argument would likely have failed even had it been included in a properly amended complaint. McDonald is entitled to qualified immunity absent a showing that she violated a clearly established constitutional right, as discussed above in Section II.A.2. See Ricciuti, 834 F.3d at 167. Plaintiff has made no showing of a clearly established constitutional right to advance notice of each specific injury underlying emergency child protection proceedings. See, e.g., Green ex rel. T.C. v. Mattingly, No. 07-CV-1790 (ENV) (CLP), 2010 WL 3824119, at *9 (E.D.N.Y. Sept. 23, 2010) ("It is questionable whether any notice at all is constitutionally required" for temporary removal hearings. (citing Tenenbaum v. Williams, 193 F.3d 581, 594 n.10 (2d Cir. 1999))).

## III. CONCLUSION

For the reasons stated above, Defendant McDonald's Motion for Summary Judgment (Dkt. 54) is GRANTED. To the extent that Plaintiff purports to assert a new claim in her opposition papers, that claim is DISMISSED as procedurally barred. This Order disposes of all remaining claims, and so the Clerk of Court is respectfully DIRECTED to close the case. The Clerk is further DIRECTED to send a copy of this order to Plaintiff.

SO ORDERED.

Dated: Brooklyn, New York
November 21, 2016

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge